2020bgfryarcf

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

UNITED STATES OF AMERICA

        v.                        21 CR 703(NSR)

                                 BAIL HEARING

OCTAVIUS FRYAR,

         Defendant.

----------------------------------x

                               United States Courthouse
                               White Plains, N.Y.
                               November 16, 2020

Before:  THE HONORABLE JUDITH C. McCARTHY, Magistrate Judge

                        APPEARANCES

AUDREY STRAUSS
    United States Attorney for the
    Southern District of New York
DEREK WIKSTROM
    Assistant United States Attorney

FRANCIS O'REILLY
    Attorney for Defendant

Also present:  VINCENT ADAMS, Pretrial Services

*Proceeding recorded via digital recording device.

2020bgfryarcf

1           THE DEPUTY CLERK:  United States of

2  America v. Octavius Fryar.

3           Counsel, please state your appearances for the

4  record.

5           MR. WIKSTROM:  Good afternoon, your Honor.  Derek

6  Wikstrom for the government.

7           THE COURT:  Good afternoon, Mr. Wikstrom.

8           MR. O'REILLY:  Francis O'Reilly on behalf of Octavius

9  Fryar, your Honor.  Good afternoon.

10           THE COURT:  Good afternoon, Mr. O'Reilly.

11           And good afternoon, Mr. Fryar.

12           Also on the line, we have Mr. Adams from Pretrial

13  Services.

14           I want to place on the record, although it's stating

15  the obvious, we're in the middle of a global pandemic and we

16  are proceeding remotely.  I am in the court and counsel is in

17  remote locations and Mr. Fryar I believe may be at one of the

18  FBI locations.

19           We had hoped to proceed by video conference, but,

20  unfortunately, the video conference capabilities are not

21  working at this moment for Mr. Fryar, so counsel and myself are

22  on video and audio while Mr. Fryar is only proceeding by

23  telephone conference audio with us.

24           Mr. O'Reilly, if you could please place on the record

25  whether your client, Mr. Fryar, or your soon-to-be client,

2020bgfryarcf

1    Mr. Fryar, consents to proceed this way.

2              MR. O'REILLY:  Yes, your Honor, he does consent.  He

3    and I spoke earlier today, your Honor, and we reviewed -- you

4    know, I discussed with him his right to an in-person hearing

5    and whether he would be willing to proceed by video

6    conferencing.  At that time, he said he would agree to proceed

7    by video conferencing.  Subsequently, your Honor, we learned

8    that there's a technical difficulty with the video for

9    Mr. Fryar.  Your Honor was kind enough to give us an

10   opportunity for Mr. Fryar and I to speak privately, and I

11   discussed with him whether he wanted to proceed by

12   teleconferencing.  He did agree to that, your Honor, so, after

13   that conversation between Mr. Fryar and myself, he consents to

14   proceeding telephonically for him alone.

15             THE COURT:  So, Mr. Fryar, is that true?  Do you

16   consent to proceed by telephone?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Okay.  I have before me the consent form.

19   I'm going to cross out the video conference and just leave the

20   telephone conference part in there.  Is that acceptable to you,

21   Mr. O'Reilly?

22             MR. O'REILLY:  Yes, your Honor.

23             THE COURT:  And then, Mr. Fryar, do I have your

24   permission to sign your name to the consent form?

25             THE DEFENDANT:  Yes.

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

2020bgfryarcf

1          THE COURT:  Okay.  I will sign your name to the

2     consent form.  I will also sign my name.

3          And Mr. Petkov seems to have gotten his Skype

4     working.

5          MR. PETKOV:  Marines don't give up, your Honor.

6          THE COURT:  Okay.  So, Mr. Petkov, thank you.

7          Mr. Fryar, can you see and hear me?

8          THE DEFENDANT:  I can see.

9          THE COURT:  I'm Judge McCarthy, the one in the black

10     robe.

11          Mr. Wikstrom, identify yourself by raising your hand.

12          You have to say something probably because he's on

13     the phone.

14          MR. WIKSTROM:  I'm Derek Wikstrom.  I'm the

15     prosecutor.

16          THE COURT:  And then Frank O'Reilly is counsel that I

17     will appoint to you.

18          And, Mr. Petkov, I can only see the roof now.

19          Thank you.

20          (Pause)

21          THE DEFENDANT:  I can only see the lawyer.

22          THE COURT:  You should be able to see whoever's

23     talking.

24          THE DEPUTY CLERK:  Judge, because we're not using

25     Skype for audio, it's not going to switch between people.

2020bgfryarcf

1          THE COURT:  Okay.  So what I'm going to ask you to

2     do, Mr. Petkov -- can you do me a favor?

3          MR. PETKOV:  Yes.

4          THE COURT:  Is it possible for you to put the audio

5     on for one moment on the Skype?  I don't know if you can.  And

6     then I will speak.  You should have me.  Now take the audio

7     off, please.

8          MR. WIKSTROM:  Your Honor, I believe you need to

9     unmute your Skype for that to work.

10          THE COURT:  Yes, that would help.  Thank you,

11     Mr. Wikstrom.

12          Mr. Petkov, you got me on your audio now -- or your

13     Skype now?

14          MR. PETKOV:  Yes.

15          THE COURT:  Okay.  Now I'm going to mute my button.

16          And, Mr. Petkov, if you could mute yours.

17          So are we ready to proceed?

18          Thank you, Agent.

19          MR. PETKOV:  You're welcome, your Honor.

20          THE COURT:  Mr. Fryar, can you see me now?  My name

21     is Judge McCarthy.

22          THE DEFENDANT:  Yes.

23          THE COURT:  And can you hear me?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Okay.  We're going to proceed this way.

2020bgfryarcf

 1          Okay, Mr. Wikstrom, when was Mr. Fryar arrested and

 2   where?

 3          MR. WIKSTROM:  Your Honor, he was arrested at

 4   approximately 7:55 this morning in Newburgh, New York.  And

 5   I'll note for the record he's now at the FBI's resident agency

 6   in Rye, New York.

 7          THE COURT:  Thank you.

 8          Okay.  So, Mr. Fryar, I want to advise you this is

 9   not a trial.  This proceeding is called an initial appearance.

10   The purpose of today's proceeding is to advise you of your

11   rights, to inform you of the charges against you and determine

12   whether bail should be set that may allow you to be released

13   and, if so, what that bail should be.

14          You have the right to remain silent at this and every

15   stage of the proceeding.  Any statement that you make may be

16   used against you.  You have the right to remain silent even if

17   you already made statements to the authorities, and you're not

18   required to answer any questions that law enforcement officers

19   ask you from this moment on.  Because of that, I suggest you

20   consult with your attorney before you answer any questions that

21   may be asked, including questions that I will ask you during

22   the proceeding.  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Ms. Hummel, could you please place

25   Mr. Fryar under oath or affirmation.

2020bgfryarcf

1                    (Defendant Octavius Fryar sworn)

2                    THE COURT:  Mr. Fryar, you're under oath.  It's

3     important for you to understand that if you knowingly make a

4     false statement during these proceedings, you could be subject

5     to prosecution for perjury or for making a false statement to

6     the Court, and you could face a punishment up to five years in

7     prison and a $250,000 fine if convicted of those offenses.

8     This punishment would be separate and apart from any sentence

9     you will be facing on the crime charged in the complaint.  Do

10    you understand that?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  It's also important for you to understand

13    that any false statement you may make during this proceeding as

14    well as any false statement you may have made to Pretrial

15    Services may be used against you at trial if you decide to

16    testify at trial.  Do you understand that?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  What is your full name, Mr. Fryar?

19                   THE DEFENDANT:  Octavius Fitzgerald Fryar.

20                   THE COURT:  And how old are you?

21                   THE DEFENDANT:  Fifty-two.

22                   THE COURT:  Do you have any difficulty reading,

23    writing, speaking or understanding English?

24                   THE DEFENDANT:  No.

25                   THE COURT:  How far did you go in school?

2020bgfryarcf

```
1            THE DEFENDANT:  Some college.

2            THE COURT:  Have you ever been hospitalized or

3    treated for narcotic or alcohol addiction?

4            THE DEFENDANT:  Yes.

5            THE COURT:  When was the last time?

6            THE DEFENDANT:  Approximately 2011.

7            THE COURT:  Okay.  Was it inpatient or outpatient?

8            THE DEFENDANT:  Inpatient.

9            THE COURT:  Thank you.

10           Have you taken or used any mind-altering drugs,

11   medicine or pills or consumed any alcohol in the last 24 hours?

12           THE DEFENDANT:  No.

13           THE COURT:  If you've made any statements to Pretrial

14   Services that you would like to have changed or added to in any

15   way, you should let your lawyer know so the record can be

16   reflected.  Do you understand that?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Mr. O'Reilly.

19           MR. O'REILLY:  Yes, your Honor.

20           THE COURT:  Any corrections or additions to the

21   Pretrial Services report?

22           MR. O'REILLY:  No, your Honor.

23           THE COURT:  Thank you.

24           So, Mr. Fryar, you have the right to be represented

25   by an attorney during all court proceedings, including this
```

2020bgfryarcf

1    one, and during all questioning by the authorities.  You also

2    have a right to consult with your attorney prior to answering

3    any questions.  Do you understand that?

4                THE DEFENDANT:  Yes.

5                THE COURT:  You also have the right to retain an

6    attorney of your own choosing.  If you cannot afford an

7    attorney, I will appoint one today to represent you without

8    cost to you.

9                I have a financial affidavit before me.

10               Mr. Fryar, would you like me to appoint counsel to

11   represent you today?

12               THE DEFENDANT:  Yes.

13               THE COURT:  Mr. O'Reilly, I know you've signed this.

14   You've signed this on behalf of your client and have completed

15   it.  If you could please put on the record how you obtained

16   this information.

17               MR. O'REILLY:  Yes, your Honor.

18               I received a copy of the financial affidavit, the CJA

19   23.  I filled it out.  Mr. Fryar and I had an opportunity to

20   speak by telephone earlier today.  I asked him the questions as

21   they are laid out in the financial affidavit form, and he

22   responded to those questions, and I indicated the answer in the

23   appropriate spot.

24               I would point out, your Honor, that I'm looking at

25   the Pretrial Services report and the financial affidavit and

2020bgfryarcf

1   there are some discrepancies between the two of them.  I'm not

2   sure they're significant discrepancies, but he had told me he

3   had a vehicle worth about $15,000 and, on the Pretrial report,

4   it says $14,000.  He indicates on the Pretrial report that he

5   has $200 in a checking account.  He told me that he did not

6   have any cash on hand.  I think I asked him about accounts.

7   There's $4,000 in cash listed on the Pretrial report.  He and I

8   actually discussed that, but that amount was seized by the

9   agents at the time of his arrest, so I did not indicate that on

10  the report as cash available to him.  And then on his liability

11  section, your Honor, he has medical expenses of $1500 a month.

12  And maybe I overlooked asking him that particular question, but

13  I do not have that on the financial report.  But other than

14  that, your Honor, that's how I gathered the information that's

15  on the financial affidavit that we submitted.

16              THE COURT:  Okay.

17              Mr. Fryar, the information you provided to your

18  attorney and the permission you gave him to sign this form, is

19  that all accurate?

20              THE DEFENDANT:  Yes.  The 4,000 that I had, it was

21  seized.  I was on my way to acquire more cars because I'm a

22  used auto car salesman.

23              THE COURT:  Okay.  And the medical liability, you

24  have $1500 medical liability, also, right?

25              THE DEFENDANT:  Yes.  That's for my dental, for

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

2020bgfryarcf

1     dental, and --

2              THE COURT:  So based on the statements you made on

3     this form, I find that you are financially unable to obtain

4     counsel, and I appoint Francis O'Reilly to represent you.

5              I want to thank you, Mr. O'Reilly, for taking this

6     appointment.

7              MR. O'REILLY:  Thank you, your Honor.

8              THE COURT:  And, Mr. Fryar, if you are not a U.S.

9     citizen, you may request of the government attorney or a law

10    enforcement official to notify a consular officer from your

11    country that you've been arrested.  Even without a request,

12    notification may be required by international agreement.

13             Are you a U.S. citizen, Mr. Fryar?

14             THE DEFENDANT:  Yes.

15             THE COURT:  So I have before me a complaint

16    containing the charge against you in this case.  It's a

17    one-count complaint charging you with possessing a firearm in

18    violation -- a felon in possession of a firearm in violation of

19    Title 18, United States Code, 922(g)(1).

20             Mr. O'Reilly, have you seen a copy of this complaint?

21             MR. O'REILLY:  Yes, I have, your Honor.

22             THE COURT:  Okay.  And have you had an opportunity to

23    review it with Mr. Fryar?

24             MR. O'REILLY:  Yes, I did, your Honor.  And we would

25    waive a public reading of the document.

2020bgfryarcf

1          THE COURT:  Okay.

2          Mr. Fryar.

3          THE DEFENDANT:  Yes.

4          THE COURT:  Have you had an opportunity to review

5    this complaint --

6          THE DEFENDANT:  Yes.

7          THE COURT:  -- with Mr. O'Reilly?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand the charges in the

10   complaint?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Okay.

13         So, Mr. O'Reilly, are you satisfied your client

14   understands the charges?

15         MR. O'REILLY:  Yes, your Honor.

16         THE COURT:  Do you waive the public reading?

17         MR. O'REILLY:  Yes, your Honor.

18         THE COURT:  On the issue of bail, what's the

19   government's position?

20         MR. WIKSTROM:  The government's seeking detention,

21   your Honor.

22         THE COURT:  And, Mr. O'Reilly, are you making an

23   argument today or reserving?

24         MR. O'REILLY:  I would like to make an argument

25   today, your Honor.  I am a little bit hampered only because of

2020bgfryarcf

1      the shortness of time, but I think there are some significant

2      issues that I would like to bring to your Honor's attention

3      that I think needs -- that would militate towards his release

4      in this case.

5              THE COURT:  Mr. O'Reilly, before you do, I would like

6      to have the government tell me on what grounds they believe

7      Mr. Fryar should be detained, and then you can respond.

8              MR. O'REILLY:  Okay.

9              MR. WIKSTROM:  Thank you, your Honor.

10             THE COURT:  Mr. Wikstrom.

11             MR. WIKSTROM:  The government's position is that

12     Mr. Fryar should be detained on both dangerousness and risk of

13     nonappearance grounds.

14             Let me start by saying that the offense conduct

15     charged here is charged solely as being a felon in possession

16     of a firearm, but the offense conduct is -- that understates

17     somewhat the seriousness of the offense conduct.  And in

18     particular, I'll represent to the Court that the government has

19     evidence that Mr. Fryar is a crack dealer and, as mentioned in

20     the complaint, he obtained this gun that he's charged with

21     possessing after and seemingly in response to his apartment

22     being robbed at gunpoint of a quantity of narcotics.

23             Mr. Fryar got this gun perhaps in order to protect

24     himself, perhaps in order to obtain retribution, but whatever

25     the reason, he knows certainly that he's not allowed to possess

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

2020bgfryarcf

1    the gun and he got it anyway in furtherance of his drug-dealing

2    business.  And so, while the government hasn't charged that

3    yet, the government certainly could and would be prepared to

4    prove it.

5            Even without that, though, this is a man who has

6    received entirely too many second chances already.  He has, as

7    recounted in the Pretrial report, six felony convictions,

8    twelve misdemeanor convictions.  He's failed to appear four

9    different times.  He's had his probation revoked in this

10   district.  He's had two parole revocations.  He received, on

11   a(b)(1)(A) conspiracy in 2010 and another

12   felon-in-possession-of-a-firearm charge, a time-served sentence

13   from Judge Karas.  He served I think approximately three years

14   on that sentence, which is a gift in the context where

15   ordinarily he would have faced a ten-year mandatory minimum

16   and, yet, that, like the other prior conviction, simply didn't

17   deter him from continuing to commit criminal offenses.

18           And so in light of his conduct here, in light of his

19   enormous criminal past, the government respectfully submits

20   that there's no condition or collection of conditions that

21   could reasonably assure the community's safety or that

22   Mr. Fryar would appear at future court proceedings.

23           THE COURT:  Thank you, Mr. Wikstrom.

24           Mr. O'Reilly, now I'm prepared to hear you.

25           MR. O'REILLY:  Thank you, your Honor.

2020bgfryarcf

1              First of all, I guess I would like to begin by saying

2     that the strength of the government's case, your Honor, is one

3     of many factors that you need to consider as you're

4     contemplating if there are appropriate conditions for

5     Mr. Fryar's release.  I think there are a combination of

6     conditions, your Honor, that would assure his return to court

7     as well as minimize any danger to the community that he may

8     pose.

9              I would like to point out, your Honor, that I spoke

10    with his mother.  Her name is Josephine Gardner.  She lives in

11    North Carolina.  And she was willing to sign a -- cosign a bond

12    on his behalf.  And then I also spoke with his brother Edward.

13    And he's a resident of Newburgh, New York.  He's been employed

14    for 23 years on a bread route.  He actually has two bread

15    routes, your Honor.  So the brother has substantial secure

16    employment for a long time, 23 years he indicated to me, and he

17    would be willing to allow his brother to come and live with him

18    if your Honor were inclined to set conditions of release.

19             Mr. Fryar, your Honor, he's 52 years old and he --

20    while he does have a significant criminal history, he does

21    have -- he also has significant medical issues that I think the

22    Court needs to consider when we're contemplating the conditions

23    of release.

24             And I would -- just looking at the excellent Pretrial

25    report prepared by Mr. Adams, your Honor, it indicates that

2020bgfryarcf

Mr. Fryar suffers from high blood pressure and diabetes as well as arthritis in the hips and then a urinary tract infection.  I would point out that high blood pressure and diabetes are significant co-morbidity factors for the COVID-19 virus, your Honor.  And I'm also looking at Mr. Fryar, and there may be some obesity issues, but I'm just doing that from the looks of it.  And so I think it's apparent from the Pretrial report that he has significant medical risks if he is to be incarcerated.

I don't know the infection rate at let's say the Westchester County facility.  I'm unaware of that right now, your Honor.  I could find that out and get back to you probably by tomorrow.  But I do know that it is present or could very well be present in the facility.  The virus is expanding, as we can -- just learned from the news reports.

So he does have significant co-morbidities, your Honor.  He does have significant family support that are willing to sign the bond and allow him to live with them.  He could be placed on home detention with location monitoring, your Honor, that would ameliorate some of the dangerousness and risk of flight.  And so thinking -- putting all of that together, your Honor, I think there are -- I would suggest a bond of a hundred thousand dollars.  His brother said that he would sign that bond, which I think is important because the people that know him best are willing to put their financial futures at risk for him, and I think that's significant for the

2020bgfryarcf

1    Court's consideration.  He would live with his brother.  He

2    would be willing to be bound by location monitoring and any

3    other condition that your Honor thinks is appropriate to secure

4    his release in this case.

5            So I think there are a combination of conditions that

6    minimize the risk of flight and the dangerousness to the

7    community.

8            Thank you, your Honor.

9            THE COURT:  Thank you.

10            Mr. Wikstrom.

11            MR. WIKSTROM:  Briefly, your Honor.  Thank you.

12            I want to note at the outset I certainly don't

13    dispute that Mr. Fryar has some medical issues, some of which

14    are COVID co-morbidities.  I do think the Westchester County

15    Jail has done a good job controlling the spread of COVID as

16    jails go.  I recognize that it's inherently a more high-risk

17    environment than community often is, although the community is

18    seeing fairly uncontrolled spread right now, too.  But the risk

19    of contracting COVID in a jail, even if it is higher than it

20    would be in the community, is not enough to overcome the danger

21    that this defendant presents or the risk of flight that he

22    presents.  And the fact that he has repeatedly previously

23    violated conditions, the fact that he has repeatedly previously

24    failed to appear should dissuade the Court from believing

25    Mr. O'Reilly's argument that there are conditions that would

2020bgfryarcf

1    secure the safety and return to court.

2              Unless the Court has any questions, I'll otherwise

3    rest on my initial presentation.

4              THE COURT:  No, Mr. Wikstrom.

5              Mr. O'Reilly, anything you want to add?

6              MR. O'REILLY:  Just briefly, your Honor.  And I

7    forgot to mention this in my initial comments.  And this is a

8    tough argument to make, but as far as the failure to appears

9    go, your Honor, Mr. Fryar indicated to me that they were a

10   result of him being incarcerated, being out on bond and then

11   picking up a new case and, therefore, had failed to appear

12   because he was incarcerated on the new charges.  I know that's

13   a difficult argument to make in this situation, but I think

14   that does explain a little bit of the failure to appears.

15             Other than that, I have no other comments, your

16   Honor.

17             THE COURT:  Thank you.

18             Mr. Adams, anything that you heard here today change

19   the recommendation of Pretrial Services, which is that there is

20   no combination of conditions that will reasonably assure the

21   defendant's appearance or the safety of the community?

22             MR. ADAMS:  Your Honor, nothing has changed our

23   opinion or my recommendation.

24             THE COURT:  Thank you.

25             So, in order to make a decision, I have to consider

2020bgfryarcf

certain factors:  The nature and circumstances of the offense

charged, including whether it's a crime involving a firearm;

the weight of the evidence against the defendant; the history

and characteristics, including the defendant's character and

mental health; the family and community ties; the employment

history; the financial resources; the criminal history; whether

there's been a history of drug or alcohol abuse or any other

problematic history concerning appearances to court; and the

nature and seriousness of a danger to any person of the

community that would be posed by your release.

          Looking at this criminal record, six felony

convictions, twelve misdemeanor convictions, four failures to

appear, one probation revocation and two parole revocations --

and the fact that some of the failures to appear may be because

he was incarcerated, that just goes to the fact that Mr. Fryar

has trouble following court orders when he's out.  And what I

see here is a man who is not following court orders.  And when

you're looking at failure to appear, it's just not absconding,

it's showing up and being able to abide by the conditions on

release.

          Although he has a brother in the community, he's

currently living in a hotel, so he does not have a permanent

residence.  He's been living out of state for a while, too.

So, although he does have some community ties, they're not as

strong as others.

2020bgfryarcf

1          I know he's working.  He's self-employed as a used
2     car salesman.  But, again, that is not the type of employment
3     history that has a tie to a specific location and would thwart
4     failing to appear.
5          He has very limited financial resources, which would
6     support not disappearing, but he does have a very lengthy
7     criminal history.  He does have a very lengthy federal criminal
8     history.  He also right now is being charged with a serious
9     offense, and the proffer from the government is that it's
10    related to some drug dealing.
11         So I do believe that the preponderance of the
12    evidence standard of risk of flight and then the higher
13    standard of danger to the community have been met in this case
14    by the government.
15         Now, I need to evaluate, however, if there are
16    conditions, special circumstances, that would warrant Mr. Fryar
17    not being released based on the pandemic and his
18    co-morbidities.  In this case, the record I have before me is
19    insufficient to me to say that it has.  I have no medical
20    records.  I think he's going to Valhalla, but I'm not a hundred
21    percent sure.  I believe and what I last heard, the numbers in
22    Valhalla have been low.
23         I will tell you my experience over this pandemic is
24    that Valhalla has done a good job, a very good job, of keeping
25    its inmates safe.  In fact, I think some people are better in

2020bgfryarcf

1   Valhalla than they are in the community.

2           But based on the information I have before me right

3   now, I cannot say that that standard has been met.  And that

4   doesn't mean, as the community spread and as things change,

5   that an application can't be made for a change of circumstances

6   later on if it warrants and if there is evidence to support it,

7   but based on the record before me right now, I cake many that

8   determination.

9           So I'm going to deny the application for bail and I'm

10  going to remand Mr. Fryar to the custody of the U.S. Marshals

11  at the end of this proceeding.

12          Mr. Fryar has been arrested on a complaint, so he has

13  a right to a preliminary hearing at which the government will

14  have the burden of establishing that there's probable cause to

15  believe that a crime for which you're being charged has been

16  committed and that you're the person who committed it.  If

17  you're in custody, you have that right to that preliminary

18  hearing within 14 days.  If you're not in custody, you have

19  that right to that preliminary hearing within 21 days.  A

20  preliminary hearing will not, however, be held if, before the

21  date it is scheduled, you are indicted by a grand jury or an

22  information is filed against you by the government.

23          In addition, you have a right to waive the

24  preliminary hearing or to consent to an extension of time for

25  that hearing and, by doing so, you do not give up any defenses

2020bgfryarcf

1    or any other rights you may have.  However, you should not

2    waive or consent to an adjournment until you've had an

3    opportunity to discuss the matter with your attorney.

4              Do you understand that, Mr. Fryar?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And, counsel, have the parties agreed to

7    a date for the preliminary hearing?

8              MR. O'REILLY:  No, your Honor.

9              THE COURT:  No.

10             Do you want to do the 14th day under the law?

11             MR. O'REILLY:  Yes, your Honor.  Thank you.

12             THE COURT:  Okay.  So the preliminary hearing is

13   scheduled for November 30th.

14             MR. O'REILLY:  Thank you, your Honor.

15             THE COURT:  Is there anything else we need to do here

16   today?

17             MR. WIKSTROM:  Nothing from the government.  Thank

18   you, your Honor.

19             MR. O'REILLY:  No, your Honor.  Thank you.

20             THE COURT:  The only question I have, Mr. O'Reilly,

21   is one of the things that I noticed, I think you mentioned

22   regarding Mr. Fryar's physical health, was also a urinary tract

23   infection.  I don't know if he's on any medication for the high

24   blood pressure or if he's on any medication for the urinary

25   tract infection, but I want to --

2020bgfryarcf

1          MR. O'REILLY:  He has -- I'm sorry.

2          THE COURT:  I want to know whether he needs a medical

3     order.

4          MR. O'REILLY:  I do, your Honor.  And as we noted,

5     he's holding up a bag of medications that he has with him.  I

6     know he's on insulin.  I don't know about the high blood

7     pressure or the other medications, but it appears there's five

8     or six medication bottles in that bag there.  So, yes, I would

9     ask for an order of medical attention.

10          THE COURT:  Okay.  We will issue that.

11          MR. O'REILLY:  Thank you, your Honor.

12          THE COURT:  Anything else?

13          MR. O'REILLY:  No, your Honor.

14          THE COURT:  Okay.

15          Stay well, everyone.

16          Good luck to you, Mr. Fryar, and stay well, please.

17     Thank you.

18          THE DEFENDANT:  Thank you.

19          MR. WIKSTROM:  Thank you, your Honor.

20

21                              ----

22

23

24

25

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103