```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ------------------------------------x
 3  UNITED STATES OF AMERICA,

 4
                                        21 CR 703 (NSR)(PED)
 5       -vs-
                                        PLEA
 6
    OCTAVIUS FRYAR,
 7
                        Defendants.
 8  ------------------------------------x

 9                              United States Courthouse
                                White Plains, New York
10
                                Friday, March 4
11                              11:00 a.m.

12
    B e f o r e:
13
                                HONORABLE PAUL E. DAVISON,
14                              Magistrate Judge

15

16  A P P E A R A N C E S:

17

    DAMIAN WILLIAMS
18       United States Attorney for the
         Southern District of New York
19  DEREK WIKSTROM,
         Assistant United States Attorney
20

21  O'REILLY & SHAW
         FRANCIS L. O'REILLY, ESQ.
22       Attorney for Defendant

23

24

25
```

1            THE DEPUTY CLERK:  Good morning.  This matter is being

2    conducted by video and telephone.  This is the matter of the

3    United States v. Fryar, case number 21 cr 703.

4            Starting with the attorney for the Government, can you

5    please note your appearance for the record.

6            MR. WIKSTROM:  Yes, good morning.  Derek Wikstrom for

7    the Government.

8            THE COURT:  I can barely hear Mr. Wikstrom.

9            (Off-the-record discussion)

10           THE COURT:  All right.  Thank you for your patience,

11   Mr. Fryar.

12           Brigid, why don't you call the case.

13           THE DEPUTY CLERK:  Yes.

14           Good morning.  This proceeding is being conducted by

15   video and telephone.  This is the matter of the United States v.

16   Fryar, case number 21 cr 703.

17           Starting with the attorney for the Government, can you

18   please note your appearance for the record.

19           MR. WIKSTROM:  Yes, good morning again, your Honor.

20   Derek Wikstrom for the Government.

21           THE COURT:  Good morning, Mr. Wikstrom.

22           MR. O'REILLY:  Good morning, your Honor.  Francis

23   O'Reilly on behalf of Octavius Fryar, who's present by video

24   conferencing.

25           THE COURT:  Good morning, Mr. O'Reilly.

1          All right, my understanding is that Mr. Fryar is

2   prepared to plead guilty to Count I of the Felony Information

3   pursuant to a plea agreement dated January 31st, 2022.

4          Is that correct?

5          MR. O'REILLY:  Yes, it is, your Honor.

6          THE COURT:  All right.  And has Mr. Fryar previously

7   been arraigned on this Information?

8          MR. WIKSTROM:  He has, your Honor.

9          THE COURT:  All right.

10         Mr. Fryar, Judge Román has authorized this plea to be

11  conducted remotely.  That's in a CARES Act order dated March 3,

12  2022, and docketed as Docket 40 in this matter.  My

13  understanding is that one of the attorneys has a quarantine

14  issue which necessitates this.  I want to make certain this is

15  acceptable to you.

16         Mr. O'Reilly has provided me with a copy of a written

17  consent form which indicates -- well, that he signed indicating

18  consent to proceed by video or teleconference.  I want to make

19  certain that this is acceptable to you.

20         Do you recall discussing this with Mr. O'Reilly?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  All right.  The form reads as follows.

23  I'm going to read it to you, and then I'm going to ask you if I

24  have your permission to sign it on your behalf.

25         "Defendant Octavius Fryar hereby voluntarily consents

1  to participate in the following proceeding via videoconferencing

2  or teleconferencing," and then the box is checked for "guilty

3  plea or change of plea hearing."

4          Is that acceptable to you, Mr. Fryar?

5          THE DEFENDANT:  Yes, sir, your Honor.

6          THE COURT:  And do I have your permission to sign that

7  written form on your behalf?

8          THE DEFENDANT:  Yes, sir, your Honor.

9          THE COURT:  Very well.  The Court will execute the

10  consent form on Mr. Fryar's behalf and it will go into the court

11  record.

12          Mr. Fryar, this is not a trial.  I am told you have

13  decided to enter a guilty plea in this case, so it's my job to

14  make sure you're aware of all of your rights and to verify that

15  any waiver of those rights is knowing and voluntary.

16          In addition, the Court has to make certain there is a

17  factual basis for your plea of guilty and it's important for you

18  to understand that the Court will not accept your guilty plea

19  unless the Court is satisfied that you are, in fact, guilty.

20          Do you understand?

21          THE DEFENDANT:  Yes, sir, your Honor.

22          THE COURT:  All right.

23          Now, this is a somewhat, heh, awkward format, we're

24  doing this remotely, and it's very important that you hear and

25  understand everything that goes on here, so if at any point you

1  don't hear me or understand what I say, I want you to interrupt

2  me, you can wave your arms to get my attention, but it's very

3  important that you hear and understand everything that goes on

4  here.

5          Will you do that?  Will you let us know if you lose

6  the audio or you don't hear or understand something?

7          THE DEFENDANT:  Yes, I will, your Honor.

8          THE COURT:  Good.

9          Mr. Fryar, you have the absolute right to be

10 represented by a lawyer at this and every stage of the

11 proceedings against you and you have the right to consult your

12 attorney before you answer any questions.

13         Do you understand?

14         THE DEFENDANT:  Yes, sir, your Honor.

15         THE COURT:  All right.

16         You should take advantage of that right if you feel

17 the need, we could set up a private conference between you and

18 Mr. O'Reilly if necessary, we're not in any hurry here, so just

19 let us know if you need to talk to Mr. O'Reilly.  Okay?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Mr. Fryar, if you were to become

22 dissatisfied with Mr. O'Reilly's services, you would be entitled

23 to apply to the Court for a new attorney to represent you, and

24 if the Court was still satisfied that you could not afford to

25 hire a lawyer and was persuaded that there was an appropriate

1    reason to relieve Mr. O'Reilly, under those circumstances a new

2    lawyer would be appointed to represent you without cost to you.

3            Do you understand?

4            THE DEFENDANT:  Yes, sir, your Honor.

5            THE COURT:  All right.

6            Ms. Altimari, would you place Mr. Fryar under oath or

7    affirmation.

8            THE DEPUTY CLERK:  Mr. Fryar, can you hear me?

9            THE DEFENDANT:  Yes, ma'am.

10           THE DEPUTY CLERK:  Mr. Fryar, you do solemnly swear or

11   affirm that the testimony you are about to give the Court in

12   this matter shall be the truth, the whole truth, and nothing but

13   the truth so help you God.

14           THE DEFENDANT:  Yes, I do.

15           THE COURT:  Can we figure out what's producing that

16   feedback loop and make it stop?

17           (Brief pause)

18           THE COURT:  All right.

19           Mr. Fryar, you're now under oath.  That means if you

20   knowingly make a false statement during this proceeding, you

21   could be prosecuted for perjury, you could face up to five years

22   in prison and a $250,000 fine if convicted for that.

23           For the record, what's your full name?

24           THE DEFENDANT:  Octavius Fryar.

25           THE COURT:  How old are you, Mr. Fryar?

1            THE DEFENDANT:  Fifty-three.

2            THE COURT:  Do you read, write, speak, and understand

3    English?

4            THE DEFENDANT:  Yes.

5            THE COURT:  How far did you go in school?

6            THE DEFENDANT:  I graduated high school.

7            THE COURT:  Have you ever been hospitalized or treated

8    for narcotic or alcohol addiction?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  How long ago were you in treatment?

11           THE DEFENDANT:  A couple of years ago, sir.

12           THE COURT:  And what were you being treated for?

13           THE DEFENDANT:  Cocaine, crack.

14           THE COURT:  All right, let me ask you this.  Is there

15   anything about your history of using cocaine or crack or any

16   other drug or any treatment that you received for that that's

17   interfering with your ability to understand what's going on here

18   this morning?

19           THE DEFENDANT:  No, sir, your Honor.

20           THE COURT:  Within the past 24 hours, have you used or

21   taken any drugs, marijuana, alcohol, medication or pills of any

22   kind?

23           THE DEFENDANT:  No, sir, your Honor.

24           THE COURT:  Are you feeling clear in your head today?

25           THE DEFENDANT:  Yes, sir, your Honor.

 1            THE COURT:  Now, Mr. Fryar, have you received a copy

 2   of the one-count Felony Information that's been filed with the

 3   Court and gone over the charges with Mr. O'Reilly?

 4            THE DEFENDANT:  Yes, I have.

 5            THE COURT:  Mr. O'Reilly, does your client waive the

 6   public reading?

 7            MR. O'REILLY:  Yes, your Honor.  Thank you.

 8            THE COURT:  All right.  Then we will proceed with what

 9   is referred to as a plea allocution.

10            Mr. Fryar, I want you to understand that you have the

11   absolute right to have this plea allocution conducted before a

12   United States District Judge, here, the Honorable Nelson Stephen

13   Román to whom this case has been assigned.  It is Judge Román,

14   the District Judge, who will impose sentence in this case.

15            I am a United States Magistrate Judge.  If you consent

16   and agree, I will conduct the plea allocution here this morning

17   and I will then make a report to Judge Román in which I will

18   recommend whether or not Judge Román should accept your plea of

19   guilty.  I'll make that recommendation based on information that

20   comes out at today's proceeding.

21            Do you understand?

22            THE DEFENDANT:  Yes, sir.

23            THE COURT:  Do you understand that you have an

24   absolute right to have this plea allocution conducted before a

25   United States District Judge?

Plea Hrg.                          USA v. Fryar

```
 1            THE DEFENDANT:  Yes, I do.

 2            THE COURT:  Do you consent and agree that I should

 3  conduct the plea allocution here this morning?

 4            THE DEFENDANT:  Yes, I do.

 5            THE COURT:  All right.

 6            I have been provided with a written consent form which

 7  indicates, Mr. Fryar, that you do consent to proceed before me

 8  for this felony plea allocution, and it appears that Mr.

 9  O'Reilly has signed this written consent form on your behalf.

10            Is that correct?

11            THE DEFENDANT:  Yes, sir, your Honor.

12            THE COURT:  You authorized Mr. O'Reilly to sign it for

13  you?

14            THE DEFENDANT:  Yes, sir.  Yes, I did.

15            THE COURT:  And did Mr. O'Reilly read that consent

16  form to you before you authorized him to sign it?

17            THE DEFENDANT:  Yes, he did.

18            THE COURT:  Did anyone threaten you or coerce you or

19  promise you anything in order to get you to authorize Mr.

20  O'Reilly to sign this form on your behalf?

21            THE DEFENDANT:  No, your Honor.

22            THE COURT:  Did you give Mr. O'Reilly authority to

23  sign that form on your behalf freely and voluntarily?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  All right.
```

```
 1              Counsel, do either of you know of any reason why this

 2   waiver and consent to proceed with a plea allocution before a

 3   United States Magistrate Judge should not be accepted?

 4              Mr. Wikstrom?

 5              MR. WIKSTROM:  No, your Honor.

 6              THE COURT:  Mr. O'Reilly.

 7              MR. O'REILLY:  No, your Honor.

 8              THE COURT:  All right.  I find that Octavius Fryar is

 9   fully competent and capable of waiving his right to appear

10   before a United States District Judge in order to enter his plea

11   of guilty.  I, therefore, accept the consent form, which will be

12   signed and placed in the court record.

13              Mr. Fryar, do you understand that your right to be

14   represented by a lawyer continues through every stage of the

15   proceeding, including trial and appeal, and that you have this

16   right whether or not you choose to plead guilty to this offense?

17              THE DEFENDANT:  Yes, I do, your Honor.

18              THE COURT:  Mr. Fryar, have you had an adequate

19   opportunity to consult with Mr. O'Reilly about your case and

20   especially about your decision to plead guilty?

21              THE DEFENDANT:  Yes, I have.

22              THE COURT:  Are you satisfied with the services which

23   Counsel has provided to you in this case?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:  Have you told Mr. O'Reilly everything you
```

1  know about the case?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  All right.  There is, as I indicated

4  earlier, a written plea agreement.  It's in letter form, it's

5  dated January 31st, 2022, it's addressed to Mr. O'Reilly in

6  reference to this case, and it appears to have been

7  countersigned by Mr. O'Reilly and signed, or countersigned, on

8  Mr. Fryar's behalf by Mr. O'Reilly today, March 4th, 2022.

9          Mr. Wikstrom, this is the operative plea agreement?

10          MR. WIKSTROM:  Yes, it is, your Honor.

11          THE COURT:  All right.  The signed plea agreement will

12  be marked as a court exhibit.

13          Mr. Fryar, do you have a copy of this January 31st

14  plea agreement?

15          THE DEFENDANT:  Yes, I do, your Honor.

16          THE COURT:  And have you read that entire agreement?

17          THE DEFENDANT:  Yes, I have.

18          THE COURT:  And did you discuss the entire agreement

19  with Mr. O'Reilly?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Did Mr. O'Reilly answer any questions that

22  you had about that agreement?

23          THE DEFENDANT:  Yes, sir, your Honor.

24          THE COURT:  And did you authorize Mr. O'Reilly to sign

25  the agreement on your behalf?

```
 1              THE DEFENDANT:  Yes, sir, your Honor.

 2              THE COURT:  Mr. O'Reilly, did you review each and

 3    every part of the plea agreement with your client?

 4              MR. O'REILLY:  Yes, your Honor.

 5              THE COURT:  Mr. Fryar, are you satisfied that you

 6    understand this entire plea agreement?

 7              THE DEFENDANT:  Yes, sir, your Honor.

 8              THE COURT:  Do you have any questions for me or for

 9    Mr. O'Reilly about what the plea agreement says?

10              THE DEFENDANT:  No, sir, your Honor.

11              THE COURT:  Does the plea agreement contain the

12    complete understanding between you and the Government in

13    connection with this case?

14              THE DEFENDANT:  Yes, sir, your Honor.

15              THE COURT:  Do you understand that anything which is

16    not set forth in the written plea agreement or placed on the

17    record at this time is not going to be binding on the outcome of

18    your case?

19              THE DEFENDANT:  Yes, I do.

20              THE COURT:  Mr. Wikstrom, is there anything apart from

21    the written plea agreement the Court should be aware of?

22              MR. WIKSTROM:  No, your Honor.

23              THE COURT:  Mr. O'Reilly, any other agreements the

24    Court should know about?

25              MR. O'REILLY:  No, your Honor.
```

Plea Hrg.                          USA v. Fryar

```
 1            THE COURT:  Mr. Fryar, did you authorize your attorney
 2  to sign this agreement on your behalf freely and voluntarily?
 3            THE DEFENDANT:  Yes, sir, your Honor.
 4            THE COURT:  Did anyone force you or coerce you or
 5  threaten you or promise you anything other than what is set
 6  forth in the written plea agreement itself in order to get you
 7  to sign the plea agreement?
 8            THE DEFENDANT:  No, sir, your Honor.
 9            THE COURT:  All right.
10            At this point, Mr. Fryar, the law requires me to
11  advise you of the maximum possible penalties to which you expose
12  yourself by pleading guilty to this charge.  This is the
13  worst-case scenario.  Do you understand?
14            THE DEFENDANT:  Yes, sir, your Honor.
15            THE COURT:  Okay.
16            First of all, the Felony Information charges you with
17  participating in an illegal conspiracy or agreement with other
18  people to distribute 28 grams or more of cocaine base, or crack.
19            Do you understand that charge?
20            THE DEFENDANT:  Yes, sir, your Honor.
21            THE COURT:  If you are convicted as charged for that
22  offense, you face a maximum term of imprisonment of 40 years,
23  you face a mandatory minimum term of imprisonment of 5 years,
24  you face a maximum term of supervised release of life and a
25  mandatory minimum term of supervised release of 4 years, you
```

Plea Hrg.                        USA v. Fryar                        14

1  face a maximum fine of the greater of $50 million or twice the

2  gain or loss associated with the offense, and you also face a

3  $100 special assessment, which is mandatory.

4          Now, with regard to any term of supervised release,

5  Mr. Fryar, if you are sentenced to a term of imprisonment, even

6  if you are sentenced to the maximum term of imprisonment, and

7  you are also sentenced to a term of supervised release, and if

8  you then violate the conditions of your supervised release,

9  under those circumstances you could be sentenced to an

10 additional term of imprisonment for violating the conditions of

11 your supervised release.  In this case, you would face an

12 additional prison term of up to 3 years.  Also, if you violate

13 the conditions of your supervised release, you're not going to

14 receive credit for time you already served in prison or for time

15 served on supervised release.

16         What that means here, Mr. Fryar, is if you were

17 sentenced to a term of imprisonment, even if you got the

18 maximum, which is 40 years, and you served all forty, and you

19 then went out on supervised release and you violated, the Court

20 could send you back to prison without a jury trial even though

21 you had already served the maximum.

22         Do you understand?

23         THE DEFENDANT:  Yes, sir, your Honor.

24         THE COURT:  You are also exposed to the possibility of

25 an order of forfeiture or restitution.

Plea Hrg.                           USA v. Fryar

1            Mr. Wikstrom, is there some agreement in that regard?

2            (Brief pause)

3            MR. WIKSTROM:  Sorry, your Honor, I got confused about

4    which mute button to press.

5            There's no restitution that's going to be sought here.

6    There is an agreement with respect to forfeiture that is

7    contained on the bottom of page 1 and the top of page 2 of the

8    plea agreement.

9            THE COURT:  And, in fact, the agreement references a

10   consent order of forfeiture which is attached, but not actually

11   --

12           MR. WIKSTROM:  That's -- yes, your Honor, the consent

13   order of forfeiture has not yet been prepared.  However, the

14   Defendant is admitting to a forfeiture allegation in the plea

15   agreement and is agreeing to forfeit a sum of money equal to

16   $5,833.

17           THE COURT:  And is that the full extent of forfeiture

18   that the Government would be seeking here?

19           MR. WIKSTROM:  It is, your Honor.

20           THE COURT:  All right, thank you.

21           Mr. Fryar, do you understand that these are all

22   possible sentences that could be imposed following a plea of

23   guilty in this case?

24           THE DEFENDANT:  Yes, sir, your Honor.

25           THE COURT:  Are you a United States citizen?

1          THE DEFENDANT:  Yes, I am, your Honor.

2          THE COURT:  And are you a citizen by birth or by

3  naturalization?

4          THE DEFENDANT:  Birth, your Honor.

5          THE COURT:  All right.  I ask you these questions, in

6  part, Mr. Fryar, because if you were not a United States citizen

7  or even if you were a naturalized citizen, a conviction in this

8  case could potentially have an adverse affect on your status,

9  but we don't have to discuss that further because you're a

10  natural-born citizen.

11          Do you understand you are pleading guilty here to a

12  felony offense and that a felony conviction may deprive you of

13  certain valuable civil rights which might include the right to

14  vote, the right to hold public office, the right to serve on a

15  jury, the right to possess any type of firearm, including rifles

16  and shotguns, the right to be considered for certain types of

17  employment or to be bonded or to serve in the U.S. military, and

18  the right to possess or obtain certain government-issued

19  licenses, including licenses that may be required in certain

20  professions and occupations?

21          Do you understand that.

22          (Brief pause)

23          THE COURT:  Mr. Fryar, I did not hear your response.

24  We seem to have a problem here because I can't hear Mr. Fryar.

25          (Brief pause)

1          THE DEPUTY CLERK:  We lost the audio.

2          MR. WIKSTROM:  Yeah, I can't hear him either.

3          THE DEPUTY CLERK:  Yeah, they need to dial him back

4   in.

5          (Brief interruption)

6          THE COURT:  All right, Mr. Fryar seems to have

7   summoned assistance.

8          (Brief interruption)

9          THE COURT:  All right, we have reestablished the audio

10  link with Mr. Fryar.

11         Mr. Fryar, the last thing I said to you was to explain

12  that by pleading guilty, you are giving up certain valuable

13  civil rights.  Did you hear that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And do you understand it?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  All right.  Let me explain to you further,

18  Mr. Fryar, that many of those civil rights, including the right

19  to vote, are controlled by state law and consequently, the

20  specific consequences of a felony conviction will vary from

21  state to state.

22         Do you also understand that one effect of a plea of

23  guilty to a narcotics offense is that it may render you

24  ineligible for certain federal and federally-funded benefits

25  that you might otherwise have been entitled to that might

1  include Social Security, food stamps, education loans or grants,

2  and public housing or housing subsidies?

3          Do you understand that?

4          THE DEFENDANT:  Yes, sir, your Honor.

5          THE COURT:  Mr. Fryar, do you understand that these

6  are all possible legal consequences of a guilty plea in this

7  case?

8          THE DEFENDANT:  Yes, sir, your Honor.

9          THE COURT:  Do you understand that the United States

10 Sentencing Commission has published guidelines for judges to

11 follow in determining the appropriate sentence to impose in a

12 criminal case?

13          THE DEFENDANT:  Yes, sir, your Honor.

14          THE COURT:  Do you also understand that the guidelines

15 are not mandatory, but must be considered by the Court, along

16 with other factors and other information, when the Court

17 determines the appropriate sentence to impose?

18          THE DEFENDANT:  Yes, sir, your Honor.

19          THE COURT:  Have you and Mr. O'Reilly talked about how

20 the sentencing guidelines would be calculated in your case?

21          THE DEFENDANT:  Yes, sir, your Honor.

22          THE COURT:  All right.

23          Now, the plea agreement that we talked about a couple

24 of minutes ago includes a stipulated guideline range of between

25 110 and 137 months of imprisonment.  It also indicates that

 1   subject to your ability to pay, the fine range in this
 2   case...well, withdrawn.  It's a little bit more complicated than
 3   that and so, Mr. Fryar, what I just said is not entirely
 4   correct.
 5           The agreement indicates that there may be a dispute or
 6   an unresolved issue in this case regarding whether or not you
 7   fall under the career offender provisions of the sentencing
 8   guidelines.  You're aware of that issue?
 9           THE DEFENDANT:  Yes, sir, your Honor.
10           THE COURT:  All right.  And the calculation of your
11   sentencing guideline range is going to be different whether or
12   not Judge Román determines that you fall under career offender.
13   Do you understand that?
14           THE DEFENDANT:  Yes, sir, your Honor.
15           THE COURT:  The agreement indicates that if you fall
16   under career offender, then the guideline range is 188 to 235
17   months and the fine range is between $30,000 and $50 million.
18           You're aware of that?
19           THE DEFENDANT:  Yes, sir, your Honor.
20           THE COURT:  The agreement also indicates that if you
21   don't fall under career offender, then the guideline range is
22   110 months to 137 months and the fine range is between $20,000
23   and $50 million.  You're aware of that?
24           THE DEFENDANT:  Yes, sir, your Honor.
25           THE COURT:  And you understand that Judge Román will

1  make the final decision about whether you are treated as a

2  career offender or not?

3              THE DEFENDANT:  Yes, sir, your Honor.

4              THE COURT:  Do you understand that regardless of

5  whether you fall under the career offender or don't fall under

6  the career offender, these ranges represent nothing more than an

7  understanding between you and your lawyer and Government Counsel

8  and those ranges are not binding on Judge Román when he imposes

9  sentence?

10             THE DEFENDANT:  Yes, sir, your Honor.

11             THE COURT:  Do you understand that Judge Román will

12 consider the guidelines, but will impose a sentence in

13 accordance with the applicable statute, which means the only

14 thing you can know for sure in this case is that the sentence

15 will not be more than 40 years, nor will it be less than 5

16 years?

17             THE DEFENDANT:  Yes, sir, your Honor.

18             THE COURT:  Do you understand that the Court will not

19 be able to determine the appropriate sentence to impose until

20 after a pre-sentence report has been prepared and after you and

21 your lawyer, as well as Government Counsel, have had an

22 opportunity to challenge the facts reported in the pre-sentence

23 report, as well as the calculation of the sentencing guideline

24 range and any sentence recommendation contained in that report?

25             THE DEFENDANT:  Yes, sir, your Honor.

1            THE COURT:  Do you understand that if there are

2  objections to the pre-sentence report, those objections will be

3  ruled on by the Court and if necessary, a hearing will be held

4  to determine what information is pertinent to the calculation of

5  your sentence?

6            THE DEFENDANT:  Yes, sir, your Honor.

7            THE COURT:  And you also understand that the Probation

8  Department will make a recommendation with regard to the career

9  offender treatment and then it will be up to Judge Román to make

10 a determination about that?

11           THE DEFENDANT:  Yes, sir, your Honor.

12           THE COURT:  Mr. Wikstrom, do we have an appeal waiver

13 in this agreement?

14           MR. WIKSTROM:  We do, your Honor.

15           THE COURT:  Can I ask you to summarize it for the

16 record.

17           MR. WIKSTROM:  Certainly.  So it begins -- just for

18 the record, it begins on the bottom of page 6 and continues on

19 to page 7.

20           In substance, the appeal waiver provides that the

21 Defendant will not directly appeal or collaterally challenge any

22 sentence within or below the range running from the low end of

23 the stipulated guidelines range to the high end of the higher

24 career-offender range.  In other words, the Defendant won't

25 appeal or collaterally challenge any sentence within or below

1  the range of 110 to 235 months imprisonment, and that applies

2  regardless of the outcome of this dispute over the

3  career-offender provisions, and it's mutual in the sense that

4  the Government is prohibited from appealing any sentence within

5  or above that range of 110 to 235 months imprisonment.

6          In addition, the appeal waiver waives any appeal or

7  collateral challenge as to any fine that is less than or equal

8  to $5 million on the part of the Defendant and waives as to the

9  Government any appeal of a fine greater than or equal to

10  $20,000.

11          The parties are also agreeing not to appeal or bring

12  any collateral challenge to a forfeiture amount that is less

13  than or equal to $5,833 and the Defendant is agreeing not to

14  appeal or collaterally challenge a special assessment less than

15  or equal to $100.

16          As always, this appellate waiver does not prohibit

17  appeals or collateral challenges based on ineffective assistance

18  of counsel.

19          THE COURT:  Do you understand this to mean, in effect,

20  that neither party can appeal Judge Román's determination as to

21  the career-offender application so long as Judge Roman imposes a

22  guideline sentence?

23          MR. WIKSTROM:  So long as Judge Román imposes a

24  sentence within either guidelines range, meaning that -- say the

25  Government loses on this issue and then the Defendant is

1  sentenced to 110 months, the Government would not be permitted

2  to appeal that, and, likewise, if Mr. Fryar loses the

3  career-offender issue and Judge Román imposes a sentence of 235

4  months, the top of the upper range, Mr. Fryar would have waived

5  his right to appeal or collaterally challenge that sentence.

6          THE COURT:  Mr. Fryar, do you understand that one

7  effect of this plea agreement that you've entered into with the

8  Government is that you are giving up the right -- the rights

9  that you might otherwise have had to appeal or otherwise

10  challenge any sentence that does not exceed 235 months

11  imprisonment?

12          THE DEFENDANT:  Yes, sir, your Honor.

13          THE COURT:  And that means that if Judge Román rules

14  against you on the career-offender issue, you won't be able to

15  appeal unless the Judge gives you more than 235 months.

16          Do you understand?

17          THE DEFENDANT:  Yes, sir, your Honor.

18          THE COURT:  Now, do you also understand that you are

19  giving up the right to appeal or otherwise challenge any term of

20  supervised release, any fine that does not exceed $5 million,

21  and any forfeiture that does not exceed $5,833?

22          THE DEFENDANT:  Yes, sir, your Honor.

23          THE COURT:  Mr. O'Reilly, have you reviewed with your

24  client the first full paragraph on page 7 of the agreement

25  commonly referred to as the *Brady* waiver paragraph?

1          MR. O'REILLY:  Yes, I have, your Honor.

2          THE COURT:  Are you satisfied that Mr. Fryar

3  understands the consequences of that particular paragraph?

4          MR. O'REILLY:  Yes, your Honor.

5          THE COURT:  Mr. Fryar, do you understand that if you

6  disagree with Judge Román's sentencing decision, that will not

7  give you a basis to withdraw your plea of guilty?

8          THE DEFENDANT:  Yes, sir, your Honor.

9          THE COURT:  Do you also understand that parole has

10 been abolished in the federal system and that if you are

11 sentenced to a term of imprisonment, you will not be eligible

12 for early release on parole?

13         THE DEFENDANT:  Yes, sir, your Honor.

14         THE COURT:  Do you understand you do not have to plead

15 guilty, you have an absolute right to plead not guilty and to

16 have this case go to trial by judge or by jury?

17         THE DEFENDANT:  Yes, sir, your Honor.

18         THE COURT:  Do you understand that if you choose to

19 plead not guilty, you have a right to have a speedy and public

20 trial of your case?

21         THE DEFENDANT:  Yes, sir, your Honor.

22         THE COURT:  Do you understand that at any such trial,

23 you would be entitled to the presumption of innocence and that

24 the presumption would remain with you until the Government

25 proves each and every element of the crimes charged beyond a

1  reasonable doubt to the satisfaction of the judge if it's a

2  judge trial or to the unanimous satisfaction of the jury if it's

3  a jury trial?

4            THE DEFENDANT:  Yes, sir, your Honor.

5            THE COURT:  Mr. Fryar, at any such trial, you would

6  have the right, with the assistance of your lawyer, to confront

7  and cross-examine the witnesses against you.  You would have the

8  right to call witnesses to testify on your behalf and to have

9  subpoenas issued to compel witnesses to come and testify.  You

10 would also have the right to testify at your trial, but you

11 could not be forced to testify, and if you decided not to

12 testify, your decision to remain silent could not be held

13 against you in any way.

14           At your trial, you would also have the right I

15 described earlier to the assistance of a lawyer and to have a

16 lawyer appointed to represent you without fee if you could not

17 afford counsel.

18           Mr. Fryar, do you understand that if you plead guilty

19 to this offense, you will give up your right to a trial, and

20 except for the right to a lawyer, you will also give up all the

21 other rights which I have explained to you here?

22           THE DEFENDANT:  Yes, sir, your Honor.

23           THE COURT:  Mr. Fryar, have you clearly heard and

24 understood everything I've said?

25           THE DEFENDANT:  Yes, sir, your Honor.

Plea Hrg.                          USA v. Fryar

```
 1              THE COURT:  Do you have any questions for me or for
 2    Mr. O'Reilly about anything I've said or anything I've asked
 3    you?
 4              THE DEFENDANT:  No, your Honor.
 5              THE COURT:  All right.
 6              Mr. Wikstrom, can I ask you to outline the elements of
 7    the offense charged and then tell me what facts the Government
 8    would be prepared to prove at trial to establish those elements.
 9              MR. WIKSTROM:  Yes, certainly, your Honor.
10              The elements of Count I are:
11              First, an agreement or understanding to violate the
12    federal drug laws between the Defendant and one other person;
13              Second, that the Defendant knowingly became a member
14    of that conspiracy;
15              And, third, that the overall scope of that conspiracy
16    involved at least 28 grams of mixtures and substances containing
17    a detectable amount of cocaine base.
18              In addition to proving those three elements, the
19    Government would also have to prove by a preponderance of the
20    evidence that venue was proper in the Southern District of New
21    York.
22              At trial, I expect the Government would prove that Mr.
23    Fryar conspired with others to distribute crack cocaine in and
24    around Newburgh, New York, between at least July 2020 and
25    November 2020.
```

Plea Hrg.                          USA v. Fryar

```
 1            The Government's evidence at trial would include,
 2  among other things, law enforcement testimony about surveillance
 3  of the Defendant and statements made by the Defendant,
 4  recordings of statements made by the Defendant, and physical
 5  evidence, including narcotics, seized from the Defendant and
 6  drug paraphernalia and money seized from him.
 7            THE COURT:  Thank you.
 8            Mr. Fryar, did you hear what the Assistant U.S.
 9  Attorney just said?
10            THE DEFENDANT:  Yes, sir, your Honor.
11            THE COURT:  At this time, how do you wish to plead to
12  Count I of the Information charging you with knowingly
13  participating in an illegal conspiracy with other people to sell
14  at least 28 grams of crack cocaine?
15            THE DEFENDANT:  Guilty, your Honor.
16            THE COURT:  Has anyone threatened you or coerced you
17  or pressured you improperly in order to get you to plead guilty
18  to this charge?
19            THE DEFENDANT:  No, sir, your Honor.
20            THE COURT:  Has anyone made any promises to you other
21  than what is set forth in the written plea agreement in order to
22  persuade you to plead guilty?
23            THE DEFENDANT:  No, sir, your Honor.
24            THE COURT:  Has anyone made any specific promise to
25  you about what the sentence of the Court will be?
```

1              THE DEFENDANT:  No, sir, your Honor.

2              THE COURT:  All right, then, Mr. Fryar, you need to

3 tell me in your own words what you did that makes you guilty of

4 this offense.

5              THE DEFENDANT:  I conspired with another person to

6 distribute 28 grams of cocaine base.

7              THE COURT:  All right, let me follow up with a couple

8 of questions.

9              First of all, you conspired.  Are you telling me that

10 you agreed with somebody else to jointly participate in the

11 acquisition and distribution of cocaine base, or crack cocaine?

12             THE DEFENDANT:  Yes, sir, your Honor.

13             THE COURT:  And did you do that at least between about

14 July 2020 and November 2020?

15             THE DEFENDANT:  Yes, sir, your Honor.

16             THE COURT:  And did you do that up in and around

17 Newburgh, New York?

18             THE DEFENDANT:  Yes, sir, your Honor.

19             THE COURT:  And that's in Orange County in the

20 Southern District of New York.

21             Did you commit these acts knowingly and willfully?

22             THE DEFENDANT:  Yes, sir, your Honor.

23             THE COURT:  Did you know it was against the law to do

24 what you were doing?

25             THE DEFENDANT:  Yes, sir, your Honor.

1          THE COURT:  Is there anything else which either

2  Counsel believes the Court needs to elicit from Mr. Fryar before

3  making the appropriate recommendation to Judge Román?

4          Mr. Wikstrom?

5          MR. WIKSTROM:  No, your Honor.  Thank you.

6          THE COURT:  Mr. O'Reilly.

7          MR. O'REILLY:  No, your Honor.

8          THE COURT:  All right.

9          Mr. Fryar, just to confirm, you are consenting to the

10  forfeiture of $5,833 here?

11          THE DEFENDANT:  Yes, sir, your Honor.

12          THE COURT:  Mr. O'Reilly, do you know of any reason

13  why the Court should not recommend acceptance of your client's

14  plea of guilty?

15          MR. O'REILLY:  No, your Honor.

16          THE COURT:  Mr. Wikstrom, do you know of any reason

17  why the Court should not recommend acceptance of this plea?

18          MR. WIKSTROM:  No, your Honor.

19          THE COURT:  Mr. Fryar, in light of everything that's

20  been said here today, is it still your wish to plead guilty to

21  the single count of the Felony Information?

22          THE DEFENDANT:  Yes, sir, your Honor.

23          THE COURT:  Very well.

24          Upon this allocution, I find that Defendant, Octavius

25  Fryar, is fully competent and capable of entering an informed

1  plea.  The plea is knowing and voluntary and is supported by an

2  independent factual basis for each and every element of the

3  crime charged.  Accordingly, I respectfully report and recommend

4  to Judge Román that the plea be accepted and that Mr. Fryar be

5  adjudged guilty of the offense charged in the Felony

6  Information.

7           I direct the Probation Department to conduct a

8  pre-sentence investigation.

9           Mr. Fryar, this is important.  Arrangements will be

10 made for you to be interviewed by a probation officer.  I'm sure

11 Mr. O'Reilly will assist you in preparing for that interview.

12 You're entitled to have your attorney participate in the

13 interview if you wish.  You must be fully honest and truthful

14 during that interview, because if Judge Román learns that you

15 have provided false, incomplete, or misleading information, that

16 could be held against you at the time of sentencing.

17          Do you understand?

18          THE DEFENDANT:  Yes, sir, your Honor.

19          THE COURT:  All right.

20          Mr. Wikstrom, the case summary should go to Probation

21 within 14 days.

22          Mr. O'Reilly, you should promptly contact Probation

23 and make your client available for interview within that same

24 interval.  I direct the reporter to provide a transcript of

25 these proceedings within 30 days setting forth my report and

Plea Hrg.                         USA v. Fryar                         31

```
 1  recommendation to Judge Román.  That transcript should come to
 2  me for review.
 3          Defendant is under an order of detention, Mr.
 4  Wikstrom?
 5          MR. WIKSTROM:  Yes, your Honor.
 6          THE COURT:  That will continue.  We'll adjourn for
 7  sentencing.
 8          Ms. Altimari, do we have a date and time?
 9          THE DEPUTY CLERK:  Yes.  It will either be June 8th or
10  June 9th at ten a.m. on either day.
11          THE COURT:  All right.  Counsel should contact Judge
12  Román's chambers as those dates approach to firm up the date and
13  time of sentencing.
14          Mr. Wikstrom, just to confirm on the record, a 5(f)
15  warning has previously been given in this case?
16          MR. WIKSTROM:  Yes, your Honor, in November of last
17  year, I believe this -- I believe your Honor gave a 5(f) warning
18  and then issued a written order.
19          THE COURT:  Quite possible, but I can't confirm that.
20          MR. WIKSTROM:  Heh, heh.
21          THE COURT:  All right, is there anything else from the
22  Government?
23          MR. WIKSTROM:  There is not.  Thank you, Your Honor.
24          THE COURT:  Anything else from you, Mr. O'Reilly?
25          MR. O'REILLY:  No, your Honor.  Thank you.
```

Plea Hrg.                    USA v. Fryar

1          THE COURT:  Very well.  Then we'll stand in recess.

2          Good luck to you, Mr. Fryar.

3          THE DEFENDANT:  Thank you, Your Honor.  Have a nice

4     day.

5          THE COURT:  You, too.

6          MR. WIKSTROM:  Take care, everyone.

7          Certified to be a true and accurate transcript.

8          *Tabitha Dente*

9          _____

10              TABITHA DENTE, SR. COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25